**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CASSAUNDRA M.,[1] | |
| Plaintiff, | CIVIL NO. 3:25-CV-01372 |
| v. | (LATELLA, M.J.) |
| FRANK BISIGNANO, | |
| Defendant. | |

**MEMORANDUM**

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Cassaundra M.'s claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons expressed herein, and upon detailed consideration

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and remanded.

## 1. Background and Procedural History

On February 15, 2023, Plaintiff Cassaundra M. ("Ms. M.") filed an application for Title II benefits. (Doc. 6-5 at 5)[2]. In her application, Ms. M. claimed disability beginning August 1, 2018. (*Id.*). The Social Security Administration initially denied Ms. M.'s claim on April 27, 2023 (doc. 6-3 at 2) and again on reconsideration on July 19, 2023 (doc. 6-3 at 14). Ms. M. filed a request for a hearing before an Administrative Law Judge ("ALJ") and on March 11, 2024, ALJ Gerard Langan conducted the requested hearing. (Doc. 6-2 at 36).

In a written opinion dated September 12, 2024, the ALJ determined that Ms. M. is not disabled and therefore not entitled to the benefits sought. (Doc. 6-2 at 18-30). Ms. M. appealed the ALJ's decision to the Appeals Council, who, on May 27, 2024, denied Ms. M.'s

---

[2] For the sake of consistency, reference is made in all instances to the ECF document numbers and pagination.

request for review. (Doc. 6-2 at 2). On July 27, 2025, Ms. M. filed the instant action. (Doc. 1). The parties consented to have a magistrate judge preside over this matter on August 11, 2025. (Doc. 5). The Commissioner responded to the Complaint on August 27, 2025, providing the requisite transcripts from the disability proceedings. (Doc. 6). The parties then filed their respective briefs (Docs. 9, 10, 11), with Ms. M. alleging one error warranting reversal or remand. (Doc. 9 at 1).

### 2. THE ALJ'S DECISION

In a decision dated September 12, 2024, the ALJ determined Ms. M. "has not been under a disability, as defined in the Social Security Act, from August 1, 2018, the alleged onset date, through June 30, 20222, the date last insured." (Doc. 6-2 at 30). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Ms. M. met the insured status requirements of the Social Security Act through June 30, 2022. (Doc. 6-2 at 20).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined Ms. M. "did not engage in [SGA] during the period from her alleged onset date of August 1, 2018 through her date last insured of June 30, 2022." (Doc. 6-2 at 20). Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find

that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found that Ms. M. has the following severe impairments: intractable chronic migraine headaches; anxiety, and depression. (Doc. 6-2 at 21).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Ms. M.'s impairments, considered individually or in combination, met or equaled a Listing. (Doc. 6-2 at 14). Specifically, the ALJ considered Listings 11.04 (Vascular insult to the brain), 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety

and obsessive compulsive disorders) and considered Plaintiff's headaches in accordance with SSR 19-4p. (Doc. 6-2 at 21-24).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence. The ALJ determined that, through the date last insured, Ms. M. had the [RFC] to perform:

> light work as defined in 20 CFR 404.1567(b) except the claimant should avoid unprotected heights and industrial machinery. The claimant should avoid climbing ladders and scaffolds, but can frequently climb ramps and stairs. The claimant can tolerate occasional exposure to temperature extremes, humidity, and environmental irritants, such as dusts, fumes, odors, and gases. The claimant should avoid noise above level 3 noise intensity level. The claimant is able to understand, retain, and carry out simple instructions with occasional workplace changes and occasional decision-making. The claimant should avoid interaction with the public, except for incidental contact, but can tolerate frequent interaction with supervisors and co-workers.

(Doc. 6-2 at 24).

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past

relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 5 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ determined Ms. M. is unable to perform any past relevant work. (Doc. 6-2 at 28). The ALJ identified past relevant work as a buffet waitress and cook, but determined the exertional requirements of each job exceeded Ms. M.'s RFC. (Doc. 6-2 at 22).

Accordingly, the ALJ moved on and determined that on the date last insured, Ms. M. was 36 years-old, defined as a younger individual age 18-39. (Doc. 6-2 at 29). The ALJ also noted that Ms. M. has at least a high school education. (*Id.*). The ALJ then concluded that, through the date last insured, considering Ms. M.'s age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Ms. M. could have performed. (*Id.*). The ALJ specifically

identified the positions of electronics accessory assembler, marker, and routing clerk. (Doc. 6-2 at 29-30).

As a result of this analysis, the ALJ determined that Ms. M. was not disabled and denied her applications for benefits. (Doc. 6-2 at 30).

### 3. Standard of Review

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the

claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately

developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Ms. M. is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of

review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### 4. **Discussion**

Ms. M. argues that the ALJ erred in finding consultative psychological consultant Dr. Havel's opinion persuasive, but failing to incorporate one of his assessed limitations into Plaintiff's RFC without an explanation for the omission. (Doc. 9 at 7-8). Ms. M. claims that Dr. Havel opined that she has mild limitations interacting appropriately with the public and supervisors and moderate limitations interacting appropriately with coworkers and responding to usual work situations and changes in a routine work setting. (*Id.*). However, the ALJ did not incorporate an associated limitation into her RFC. (*Id.*). Rather, the ALJ found that Plaintiff could have frequent interaction with supervisors and coworkers. (*Id.*). Ms. M. argues that the RFC is therefore in conflict with Dr. Havel's opinion. (*Id*). Because the ALJ failed to explain why the limitations were not adopted in the RFC, she claims that remand is warranted.

In response, the Commissioner argues that the ALJ acted in accordance with the applicable regulatory schemes in evaluating Ms. M.'s impairments and assessing the RFC and the rationale is sufficient. (Doc. 10 at 5). The Commissioner maintains that "[t]here is no real dispute that the ALJ considered the medical evidence and considered the opinion evidence." (*Id.* at 10). The ALJ properly considered whether the medical opinions were persuasive and addressed the two most important factors – supportability and consistency. (*Id.* at 11). The Commissioner argues that the ALJ was not required to incorporate every limitation in Dr. Havel's opinion even though he found her opinion persuasive. (*Id.*).

ALJs must evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(a). ALJs are instructed to consider five factors in determining the persuasiveness of medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant

firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). While an ALJ is required to "consider" all five of the factors used to determine the persuasiveness of a medical opinion, he or she must only explicitly discuss the two most important factors: consistency and supportability. 20 C.F.R. § 416.920c(2).

It is well established that the ALJ is free to reject a medical source opinion but in doing so must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). While an ALJ's decision need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004), it must still consider all pertinent medical and non-medical evidence and "explain [any] conciliations and

rejections," *Burnett*, 220 F.3d at 122. When faced with conflicting medical opinions, an ALJ may choose who to credit but "must consider all the evidence and give some reason for discounting the evidence he rejects." *Becker v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 679, 686 (3d Cir. 2010); *Plummer*, 186 F.3d at 429. Although the ALJ need not credit every medical opinion, he must consider every medical opinion, 20 C.F.R. § 404.1527(b)-(c), and his explanation "must be sufficient enough to permit the court to conduct a meaningful review." *Burnett*, 220 F.3d at 119-20.

In *Nickens v. Colvin*, No. 14-140, 2014 WL 4792197 (W.D. Pa. Sept. 23, 2014), the court addressed a substantially similar issue. In that case, a non-examining state agency consultant and an examining consultant both opined that the plaintiff had at least moderate restrictions with respect to his ability to interact appropriately with supervisors. *Id.* at *1. The ALJ gave substantial weight to the opinion of the non-examining state agency consultant and limited weight to the examining consultant, but indicated that he accommodated the examining consultant's opinion regarding moderate limitations on the

plaintiff's ability to function socially in the workplace. *Id.* at *2. The ALJ did not include any limitation on interacting with supervisors in the RFC. While the court noted that "the ALJ is not required to accept [an expert's] opinion at all, much less do so wholesale," however, the court also held that the ALJ provided no explanation as to why he might have rejected the limitation regarding interacting with supervisors. *Id.* at *2. Accordingly, the court remanded the matter so that the ALJ could address the omission of the limitation. *Id.*

Similarly, in *Lori O. S. v. O'Malley*, No. 23-cv-3859, 2024 WL 3522190 (E.D. Pa. July 24, 2024), the court remanded the matter for further consideration where the ALJ failed to explain why she implicitly rejected an expert opinion that the plaintiff was moderately limited in her ability to interact with supervisors but adopted the expert's opinions regarding the plaintiff's moderate limitations with respect to interactions with the public and coworkers. *Id.* at *7.

Here, regarding Dr. Havel, the ALJ stated:

> The consultative psychological examiner, Theresa Havel, Psy.D., opined that the claimant has no limitation in understanding, remembering, or applying information and *mild limitation in interacting appropriately with the public*

> *and supervisors, but moderate limitation in interacting appropriately with co-workers* and responding appropriately to usual work situations and changes in a routine work setting (Exhibit 15F). *The undersigned finds this opinion persuasive*, as it is generally supported by the consultative examination findings themselves that note anxious and depressed mood, irritability, fair to poor insight, and somewhat limited general fund of information, it also reflects normal motor behavior, appropriate eye contact, fluent speech, coherent and goal directed thought process with normal thought content, intact attention and concentration, generally intact memory, and average cognitive functioning. Additionally, it is generally consistent with the claimant's limited and routine course of treatment, reported stability of symptoms without medication near the end of the relevant period, and generally normal clinical findings on mental status examinations during the period at issue.

(Doc. 6-2 at 28) (emphasis added). Notwithstanding that conclusion, the ALJ did not include a limitation on Ms. M.'s interactions with supervisors or coworkers in the RFC. (*Id*. at 24). While the ALJ indicated that Ms. M. should "avoid interaction with the public, except for incidental contact," he also noted that she could "tolerate frequent interaction with supervisors and coworkers." (*Id*.).

The ALJ's determination in the RFC that Ms. M. can have frequent contact supervisors and coworkers is not consistent with Dr. Havel's opinion, which the ALJ found persuasive. While the ALJ was

not required to accept the restrictions assessed by Dr. Havel wholesale, he was required to explain the basis for rejecting limitations assessed by Dr. Havel regarding interacting with coworkers and supervisors after indicating that he found the opinion persuasive. Absent an explanation for the omission of such limitations, we are unable to reconcile that inconsistency.

Put simply, the ALJ's failure to explain the omission does not permit us to conduct a meaningful review. *Burnett*, 220 F.3d at 119-20. We cannot say whether the ALJ "failed to incorporate [the supervisor and coworker interaction] limitation[ ] into [her] RFC for 'no reason or the wrong reason.'" *Reynolds v. Colvin*, No. 16-576, 2017 WL 771256, at *4 (W.D. Pa. Feb. 28, 2017) (quoting *Plummer*, 186 F.3d at 429); *see e.g., Burnett*, 220 F.3d at 119-20; *Lori O.*, 2024 WL 3522190, at *7. Accordingly, we are unable to conclude that substantial evidence supports the decision. We will therefore remand this matter for further consideration.

## 5. CONCLUSION

Based on the foregoing and pursuant to 42 U.S.C. § 405(g), the Commissioner's decision will be **vacated** and the case will be **remanded** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). An Order follows.

Dated: September 30, 2026

**/s/ Leo A. Latella**
Leo A. Latella
United States Magistrate Judge